# DETROIT UNITED RAILWAY *v.* CITY OF DETROIT ET AL.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF MICHIGAN.

No. 492.   Argued January 5, 6, 1921.—Decided February 28, 1921.

1. Action of a city requiring a street railway company, upon reasonable notice, to remove its tracks and other property from the streets, does not invade the company's contractual and property rights in violation of the Constitution, if its franchise to use the streets was granted by the city for a definite period which has expired. P. 174. *Detroit United Railway* v. *Detroit*, 229 U. S. 39.

2. Certain permits, an ordinance and a former decision considered and *held*, not to have created any right in the plaintiff street railway, as against the City of Detroit, to continue operating in streets where its franchises had expired. P. 174.

3. A street car company, after expiration of its franchise, cannot acquire new franchise rights by estoppel against the city and its people, through the expenditure with their knowledge of large sums on its railway, where the state constitution forbids the city to grant franchises not revocable at its will unless authorized by a popular vote. P. 175. *Denver* v. *Denver Union Water Co.*, 246 U. S. 178, and *Detroit United Railway* v. *Detroit*, 248 U. S. 429, explained.

4. The City of Detroit, in pursuance of its charter, passed an ordinance for the acquisition, ownership, maintenance and operation by the city of a street railway system, embracing, among others, certain streets occupied by plaintiff street railway company on which, however, its franchises had expired, and the proposition was duly submitted to the electors and adopted by the requisite majority. *Held:* (a) That a purpose therein to force the plaintiff to sell its tracks, etc., at less than their fair value, would not involve any violation of its constitutional rights, since the city was not bound to purchase, or the company to sell, and each might make its own bargain. P. 176. (b) Furthermore, under the charter, any contract to purchase such property must be approved at another popular election before it could be effective. P. 177. (c) Motives of city officials and of electors in acting on the proposal were not proper subjects for judicial inquiry. P. 178. (d) That misinformation alleged to have been publicly given the voters, improperly and fraudulently, by the common council, and to have misled them as to the purpose and effect of the election, but which was not complained of before the election, could not vitiate it. P. 179.

Affirmed.

THIS was a direct appeal from a decree of the District Court, sustaining a motion to dismiss the bill, and dismissing it, for want of equity. The case is stated in the opinion.

*Mr. Charles E. Hughes*, with whom *Mr. Elliott G. Stevenson, Mr. John C. Donnelly, Mr. William L. Carpenter, Mr. P. J. M. Hally* and *Mr. Hinton E. Spalding* were on the brief, for appellant.

*Mr. Clarence E. Wilcox* and *Mr. Alfred Lucking* for appellees.

MR. JUSTICE DAY delivered the opinion of the court.

The appellant, plaintiff below, sets forth in its bill that it is the owner of a system of street railways in the city of Detroit, and suburban lines running from said city.   The suit was brought in the District Court, to enjoin the city of Detroit and the other defendants, municipal officials, from acquiring or constructing a system of street railways, which had been provided for by an ordinance of the city, with an issue of $15,000,000 of its bonds for that purpose and approved by the requisite majority at a municipal election.

. The grounds of relief, briefly stated, are:  That establishment of the system and the issue of the bonds should  be enjoined at the instance of the plaintiff because the ordinance was not legally adopted by the voters of the city of Detroit and, if carried into effect, as proposed, and by the methods which brought about its adoption, a deprivation of plaintiff's property rights without due process of law in violation of the Fourteenth Amendment to the Constitution of the United States would result.

The District Court maintained the jurisdiction upon the federal ground alleged, and dismissed the bill upon motion in the nature of a demurrer.   The case is brought to this court by direct appeal because of the constitutional question involved.

The bill is very voluminous and abounds in argumentative statements attacking the passage of the ordinance, and the good faith of the officials concerned in bringing about its enactment.   Among the streets, proposed to be occupied by the city, are those upon which it is alleged the trackage and property rights of the complainants are

sought to be acquired, and upon which the franchise
grants of the Street Railway Company have expired.

This court in *Detroit United Railway* v. *Detroit*, 229
U. S. 39, affirming the judgment of the Supreme Court
of Michigan in the same case, 172 Michigan, 136, held
that where a street railway company, operating in the
streets of the city under a franchise granted for a definite
period, has enjoyed the full term of the grant, the munic-
ipality may, upon failure of renewal of the grant, require
the company within a reasonable time to remove its
tracks and other property from the streets, without im-
pairing any contractual obligations protected by the
Federal Constitution or depriving the street railway com-
pany of its property without due process of law. We see
no occasion to depart from the principles announced in
that case. The decree is in the record and, so far as
anything appears, is still in full force and effect. If the
courts of Michigan shall see fit to carry it into execution
we find nothing in the Federal Constitution which would
make its enforcement a deprivation of due process of law.

The Railway Company claims to have acquired prop-
erty rights in the streets of the city, upon which its
franchises have expired, by reason of matters set out in
the bill and supported in the argument submitted by
the appellant. Reference is made to certain so-called
day-to-day arrangements, by which continued operation
was permitted notwithstanding the expiration of franchise
rights. But an examination shows that construction and
operation under such agreements gave the Railway Com-
pany no extended franchises in the streets, because it was
expressly provided that the permits granted might be
revoked, and that action under the day-to-day agreement
should not waive the rights of either party.

Rights to remain in the streets are also claimed under
the so-called Kronk Ordinance, which was before this
court in *Detroit United Railway* v. *Detroit*, 248 U. S. 429,

in which this court, while reaffirming the principles laid down in *Detroit United Railway* v. *Detroit*, 229 U. S., *supra*, found that the city had not up to that time availed itself of the right to compel the removal of the tracks in streets where the company had no franchise, but had passed an ordinance looking to the continued operation by the company of the street railway system for a limited period; and, that while it acted under this ordinance there was the equivalent of a grant to operate during the life of the ordinance, entitling the company to a fair return; that the ordinance by its express terms provided for its amendment or repeal, and, that unless amended or repealed, it should remain in force for the period of one year. We do not perceive how that ordinance can now give rights to the company in the streets where the franchises have expired.

The chancery suit brought in the Wayne County Circuit Court in the name of the city of Detroit, in which a decree was granted, is also set up. An examination of that decree, which is attached to the bill, satisfies us that it was intended only to provide a temporary arrangement by which cars might be operated on the street railway system of the complainant. It is expressly stated in the decree that it shall not affect any fundamental rights of the parties in and to the streets of the city of Detroit as they at that time existed; the intention being to provide for the rate of fare at which cars should be operated; the decree being considered only a temporary solution of the problem before the court.

Allegations are made which are supposed to have the effect of estopping the city of Detroit from denying the franchise rights of the plaintiff in the streets of the city because of expenditures of large sums of money with the knowledge and acquiescence of the city authorities and the people of the city since the franchises have expired.

Under the constitution of Michigan, § 25, Art. VIII (as

revised 1908), it is provided that no city or village shall grant any public utility franchise, which is not subject to revocation at the will of the city or village, unless such proposition shall first have the affirmative vote of three-fifths of the electors. This phase of the case is covered in principle by our decision in *Denver* v. *New York Trust Co.*, 229 U. S. 123, 139, in which a similar provision of the Colorado constitution was under consideration, and wherein this court in speaking of the provision of the constitution of the State of Colorado, said:

"Besides, Article 20, § 4, of the state constitution then in force provided that no franchise relating to the streets of the city should be granted except upon a vote of the electors, and Article 9 of the city charter then in force made a like vote a prerequisite to the acquisition by the city of any public utility. So, had the council attempted by the ordinance of 1907 to make an election to purchase or to renew, the attempt would have gone for nothing."

The provision of the constitution of Michigan, in force when the ordinance here in controversy was passed, necessarily prevents acquiring rights by estoppel which might arise were the franchise within the power of the city to grant. In *Denver* v. *Denver Union Water Co.*, 246 U. S. 178, the provision of the Colorado constitution was not considered. Nor in *Detroit United Railway* v. *Detroit*, 248 U. S. 429, was reference made to the like provision of the Michigan constitution now relied upon.

The charge is made at length in the bill that the city officials, by means of the proceedings complained of, are engaged in a scheme designed to compel the company to part with its property at a sum much less than its fair value, or to cease to operate in the streets and to remove its property therefrom. In this connection it is charged that the real purpose is to compel the sale of the property of the Street Railway Company at $40,000 per mile of track, which is far less than its actual value. The giving

effect to this scheme, it is averred, would work a depri-
vation of constitutional rights of the complainant in
violation of the Fourteenth Amendment.    But, if the
city has the right to acquire the property on the best
terms it can make with the company in view of the ex-
piration of the franchises, an attempt to carry out such
purpose by an offer to buy the property at much less than
its value would not have the effect to deprive the company
of property without due process of law.    It was so ruled
in *Denver* v. *New York Trust Co.*, *supra*.    In that case
this court, in speaking of an alleged attempt of the city
to acquire the company's plant after the expiration of
its franchise for much less than its fair value, among other
things, said:

"Whether $7,000,000 is an adequate price for the com-
pany's plant, and whether its value will be ruinously
impaired by the construction of a municipal plant, are
beside the question.    Being under no obligation to pur-
chase, the city is free to name its own terms, and the water
company is likewise free to accept or reject them.    The
latter is under no compulsion other than such as inheres
in the nature of its property or arises from a proper regard
of its own interests.    That the city, mindful of its interests,
offered $7,000,000 for the water company's plant, when
it could have proceeded to the construction of a new plant
of its own, without making any offer to the company,
affords no ground for complaint by the latter."

Furthermore, it appears that under the charter of the
city of Detroit, notwithstanding the alleged attempt
to procure the property of the complainant at much less
than its value, no such purpose could be effected by pur-
chase without approval of the electors of the city.    Section
8 of the charter provides:

"Any contract to purchase or lease herein contemplated,
or any plan to condemn existing street railway property
shall be void unless approved by three-fifths of the electors

voting thereon at any regular or special election, and upon such 'proposition women tax payers having the qualifications of male electors shall be entitled to vote."

No such contract has thus far been made, and there is nothing in the ordinance attacked which undertakes to acquire the property of the complainant without compliance with this charter provision.

The bill abounds in allegations that voters were misled by the fraudulent conduct of the officials of the city in their efforts to procure the property of the complainant at less than its value by misrepresenting in a circular, and otherwise, the purpose and effect of the vote to be taken upon the question of acquiring a municipal system of transportation. We think that the court below correctly held that the motives of the officials, and of the electors acting upon the proposal, are not proper subjects of judicial inquiry in an action like this so long as the means adopted for submission of the question to the people conformed to the requirements of the law. The principle has been declared by this court. *Angle* v. *Chicago, St. Paul &c. Ry. Co.*, 151 U. S. 1, 18; *Soon Hing* v. *Crowley*, 113 U. S. 703, 710. This feature of the bill is an attempt to inquire in a collateral way into the validity of an election which was held without steps being taken to enjoin, and which was vigorously contested to a final result.

The charter of the city of Detroit gave ample power to the city to acquire, construct, own, maintain and operate a street railway system on the streets of the city within a distance of ten miles from any portion of its corporate limits that the public convenience may require. (§ 1, c. 13, Charter of Detroit, 1918.) Section 6 of the charter makes it the duty of the Board of Street Railway Commissioners to promptly proceed to purchase, acquire or construct, and to own and operate a system of street railways in and for the city, and as soon as practicable

to make the system exclusive. Section 7 gives the Board power to purchase or lease, or by appropriate proceedings to acquire, any part of the existing street railway property in the city, and to make the necessary purchases for that purpose. Section 9 gives authority to issue bonds of the city.

Under the authority of the charter the ordinance in question was passed. It directs the Board of Street Railway Commissioners to acquire, own, maintain and operate a street railway system. It requires that the proposition to acquire, own, maintain the system and to issue bonds shall be submitted to a vote at a special election. It is contended, however, that the proposal submitted did not conform to the requirements of the ordinance.

We agree with the District Court that the form of submission of the question was in substantial compliance with the law.

As to allegations of fraudulent and improper conduct of the Common Council in giving the electors information in advance of the election which misled them, the contention is that a sample ballot sent out to the electors did not definitely show the purpose to construct street railway lines where trackage already existed, and that the voters of the city were misled into believing that there was an intention not to construct the street railway lines where the same already existed, but to purchase at an estimated cost of $40,000 per mile. But we are of opinion that this so-called official information, no complaint being made of it before the election, cannot vitiate the election when the same was had upon a submission, within the authority of the city under its charter, and the ordinance passed in the form shown. Moreover, as we have already pointed out, this ordinance does not provide for acquisition at $40,000 per mile; nor can any purchase be made except by contract approved by the electors

as provided by § 8 of the charter. Other considerations are urged based upon lack of authority in the city which we have examined and deem it unnecessary to discuss.

We find nothing in the allegations of this bill establishing that the city of Detroit, in proceeding by its officials in the manner alleged, has done things which are subversive of the rights of the city to establish its own municipal system of street railways and to issue bonds for that purpose, or which would amount to deprivation of rights secured to the plaintiff by the Fourteenth Amendment to the Federal Constitution.

It follows that the decree of the District Court dismissing the bill must be

*Affirmed.*