## UNITED STATES v. SAVANNAH SHIPYARDS, Inc.

No. 10731.

Circuit Court of Appeals, Fifth Circuit.

Jan. 11, 1944.

Rehearing Denied Feb. 25, 1944.

See 140 F.2d 863.

954

Norman M. Littell, Asst. Atty. Gen., Roger P. Marquis and Vernon L. Wilkinson, Attys., Department of Justice, both of Washington, D. C., S. King Funkhouser, Sp. Asst. to Atty. Gen., and J. Saxton Daniel, U. S. Atty., and Green B. Everitt, Asst. U. S. Atty., both of Savannah, Ga., for appellant.

Edmund H. Abrahams, John J. Bouhan, and David S. Atkinson, all of Savannah, Ga., Edgar John Phillips, of Cleveland, Ohio, Charles H. Griffiths, of New York City, and J. H. Orgill, of Cleveland, Ohio, for appellee.

Before SIBLEY, HOLMES, and WALLER, Circuit Judges.

WALLER, Circuit Judge.

A proceeding by the Government against Savannah Shipyards, Inc., in eminent domain, resulted in a verdict by the jury fixing compensation at $1,285,000. The property was a partially completed shipyard or ship construction plant. The property condemned embraced land and buildings, some completed and some in process of completion, together with machinery, materials, and equipment on hand. The trial consumed five weeks. Testimony as to value ranged between the sum of $1,751,067 and the sum of $811,-299. Due to the fact that there were no recent and comparable sales of shipyards in course of construction, testimony was received for the purpose of showing cost of reproduction and cost of production as an aid to the jury in arriving at fair market value. Testimony of witnesses on both theories was admitted and in view of the fact that the shipyard was then in the process of construction, the expenditures in its construction were recent, and the improvements were new, and in the absence of any sales by which market value of such property might be established, it was proper for the Court below to receive evidence as to the cost of construction of the shipyard if such evidence was also accompanied by evidence to show that such costs were reasonable. It was proper to receive evidence as to cost of reproduction, also.

Under a stipulation an audit of the cost of construction by the owner was had and put in evidence. The book cost of construction to the date of taking amounted to $1,553,806.43. The auditors' report showed that of the book cost of construction only $1,287,525.65 was applicable to cost of construction, and that $266,280.78 of the book cost of construction was not chargeable to cost of construction in that the said $266,280.78 were expenditures which did not go into construction costs and represented no asset which the Government was acquiring.

The amount of the expenditures which the auditors found was applicable to construction cost, or that went into construction, or tangible values, was $1,219,600.15, due to the fact that the United States Maritime Commission had paid some $67,000 of the $1,287,525.65 which had gone into the construction. The verdict of the jury was $65,399.85 in excess of the amount which the auditors found had been spent by the owner in actual construction of the property which the United States was acquiring.

The proceeding was not under Sec. 258a Title 40 U.S.C.A. The United States did not assert in its petition what just compensation was, nor did it pay any sum into Court until after judgment. Upon its failure so to do, after having been requested by the condemnee and after having been ordered by the Court so to do, the condemnee by a formal pleading admitted that the Government had the right to condemn and asserted that the sum of $2,187,000 was just compensation for the property to be taken. The lower Court held that since the United States had refused to take the initiative in alleging what was just compensation, and since the landowner had assumed the burden of showing what was just compensation, the burden of proof was upon the landowner, and it had the right to open and close. This is assigned as error.

Savannah Shipyards, Inc., is owned by one Cohen with the exception of qualifying shares nominally owned by two other parties. A contract was made with another corporation, Chatham Construction Company, whereby the shipyards agreed to pay Chatham Construction Company 7½ per cent for its services in erecting the Shipyards. Chatham Construction Company was also wholly owned by Cohen. This 7½ per cent amounted to approximately $73,485.61. It was one of the items eliminated by the auditors from the cost of construction on the theory that the payment from the Shipyards to Chatham amounted to a payment from Cohen to Cohen, and that Chatham Construction Company was but the alter ego of the Shipyards or Cohen. There was evidence that this was intended to be paid out as a bonus to certain key employees. Objection was interposed to the introduction of testimony showing this item of cost but the objection was overruled and this is assigned as error.

As a part of the original plan of financing the Shipyards a bond issue was contemplated and considerable sums were spent futilely in connection with the proposed issuance, negotiation, and sale of the bonds and the acquisition of the lands upon which the Shipyards were located in exchange for the bonds. The bond issue fell through and no property was acquired by virtue of the abortive attempt to issue bonds. In short, the United States took nothing that was acquired by virtue of the attempted bond issue and the expenditures of the bond issue are not properly part of the cost of construction. The lower Court admitted testimony as to these expenditures, it being asserted that the price of land purchased was reduced $5,000 because of these expenditures. This is assigned as error.

The lower Court also permitted one Crowley, President of the Shipyards, to give an opinion as to the reasonable cost of numerous items. The Government asserts that Crowley was not qualified to give an opinion as to such matters.

The Court below allowed interest on the judgment at the rate of 7 per cent, the legal, non-contractual, rate in Georgia, from the time of the taking. The Government objected to the inclusion of a rate of interest higher than 6 per cent, and the allowance of 7 per cent interest is assigned as error.

Another error assigned by the Government is the allowance of Admiral Bakenhus, a very material witness for the condemnee, to put on direct testimony in rebuttal which should have been put on in chief.

■■■ We think that under the circumstances in this case it was not error for the lower Court to hold that the burden was on the landowner with the consequent right to open and close the case. Further-

more, such a ruling may not be the basis of an assignment of error. 26 R.C.L. 1024; Lancaster v. Collins, 115 U.S. 222, 6 S.Ct. 33, 29 L.Ed. 373; Hall v. Weare, 92 U.S. 728, 23 L.Ed. 500; Day v. Woodworth, 13 How. 363, 14 L.Ed. 181.

■ Permitting Admiral Bakenhus to give testimony in rebuttal which should have been given in chief, under the circumstances involved, was in the discretion of the lower Court, and we cannot say that the discretion of the lower Court was abused.

■ The receipt of the opinion in evidence from witness Crowley does not appear to have been objected to on the ground that the witness was not qualified to give an opinion but was objected to for other reasons. Furthermore, a large discretion must necessarily rest in the trial Court in the matter of permitting witnesses to give opinions in such cases. There is no hard and fast rule which can be properly laid down as to when a person is qualified to give an opinion. The qualification of a witness is often a matter for the jury to take into consideration. Crowley was President of the Corporation and had been connected with it almost from the beginning, and it could hardly be said, as a matter of law, that he had such an insufficient knowledge as to the prices of articles that his opinion was of no value to the jury. The weight to be given his testimony was for the jury.

■ We think the Court was in error in admitting testimony as to the allowance of 7½ per cent, or $73,485.61, to the Chatham Construction Company, since Chatham Construction Company was but the alter ego of the owner. None of the money was in fact paid out as a bonus.

■ We also think that the Court was in error in allowing evidence to be received as to the cost of the unsuccessful attempt to issue bonds. None of the expenses incurred about the effort to issue bonds, nor in the profit given to Chatham Construction Company, went into tangible property which the Government acquired in condemnation. The same is true of the corporate organization cost, at least of Chatham Construction Company, but in view of the fact that the issue in condemnation proceedings is not the cost of production or reproduction, but the fair market value, proof as to the reproduction cost or production cost is collateral to the real issue. Recent cost of construction is merely a circumstance that the jury might consider as having some bearing on fair market value in situations where there is no available evidence of market value. We do not think that the receipt of evidence as to the amount paid to Chatham Construction Company or in the attempt to issue bonds requires a reversal and retrial of the case. If the actual cost of construction had been ascertained to the penny, the jury would still have been required to ascertain fair market value because the cost of construction is not necessarily fair market value or just compensation. The cost of construction is but one fact or factor which the jury could have taken into consideration in determining fair market value at the time of the taking, and the fact, therefore, that items went into evidence showing expenditures made by the landowner which were not productive of actual and tangible value would not require a reversal of the case when the jury was instructed and informed that the cost of production or reproduction was not necessarily just compensation but that the cost was merely given to the jury for such value as the information would be worth in arriving at just compensation. We are not confronted with the same situation here as in determining actual and legitimate costs in Federal Power Commission cases. The function of the jury in the present case was to ascertain fair market value. The fair market value might have been far less than the cost or far greater than the cost, and the determination of production or reproduction cost is merely collateral to the determination of fair market value or just compensation. We will not reverse for an error in admitting evidence on a collateral matter in view of the fact that the jury was properly instructed as to the office and function of evidence as to construction cost, and the question of whether the 7½ per cent should be considered as a part of the cost of production and other controverted items were left to the jury.

The jury doubtless took into consideration the scarcity of shipyards, the demand for shipyards, the necessity for shipyards, and the abundance of work available to shipyards, from which facts the jury would not have been unjustified in concluding that at the time of the taking the owners could have sold their holdings at a profit over the amount of money actually expended in construction.

██ The verdict of the jury is well within the limits of the testimony as to value and is supported by competent testimony, and for aught that we know the jury did not take into consideration in fixing fair market value the evidence as to the 7½ per cent paid to Chatham Construction Company or the expenditures in an effort to float a bond issue. But even if error is shown in the receipt of evidence there should not be a reversal, unless it appears from the whole record that the error is prejudicial. Considering the entire record we do not think a reversal is required, particularly when the error was merely in introduction of evidence on a collateral question, and when there is ample competent evidence in the case to support the verdict of the jury. The jury could have ignored the testimony which we find to have been incompetent and still have found ample support in competent evidence for its verdict.

 We are of the opinion, however, that the lower Court was not justified in allowing interest at the rate of 7 per cent on the amount of the verdict from January 3, 1942, until paid. It is a matter of common knowledge that 7 percent is not a reasonable rate of interest during the period in question. Ordinarily, interest cannot be collected from the Government except in pursuance of statutory authority, and the maximum amount of interest which any Federal statute permits under such circumstances is the 6 per cent interest rate allowed under the Declaration of Taking Act, Sec. 258(a), 40 U.S.C.A. Under the Tucker Act, Sec. 765, 28 U.S.C.A. the rate of interest on judgments against the United States is fixed at 4 per cent, but we believe that by Sec. 258(a) of Title 40 Congress intended to establish a policy of allowing 6 per cent interest on judgments in condemnation proceedings. The fact that the United States proceeded under other statutes should not be taken to mean that the landowner in one circumstance could receive only 6 per cent interest whereas the landowner in another condemnation proceeding by the Government could receive 7 per cent. We think the Court erred in allowing interest on the judgment in excess of 6 per cent, and the judgment below should be modified to that extent, and, as so modified, it should be affirmed.[1]

Modified and affirmed.

SIBLEY, Circuit Judge (concurring).

As I understand the record, the evidence as to the abandoned bond issue was admitted on the promise of the Shipyards to prove that to the extent of $5,000 this expenditure was allowed by the Port Authority in a reduction in the price of the land purchased. The evidence did not show this in the opinion of the judge, and in his charge to the jury he instructed them not to add the $5,000 to the price paid for the land. I understand that thereby the contention of any credit for these expenditures was eliminated from the jury's consideration, and the error if any in admitting the evidence thereof was cured.

As to the 7½ per cent to be paid Chatham Construction Co. there was some evidence that it was not a profit, but intended to be paid out as a bonus to certain key employees to stimulate their efforts. There is no evidence that it was so paid out, or paid out at all. While the judge in his charge did not expressly rule this item out, but left it to the jury under a general instruction that only reasonable and necessary expenditures could be considered, there was no exception to this charge, or special request for any other. There is no reason to suppose the jury allowed any weight to this plainly unexpended item, and I think it sufficiently appears that they did not. If there was error in admitting the evidence originally, it did no harm, since the amount of the verdict shows it did not include this item, if it was based on costs. If not based on costs, with equal plainness this evidence did not affect it.

---

[1] Brown v. United States, 263 U.S. 78, 44 S.Ct. 92, 68 L.Ed. 171; Seaboard Air Line Ry. v. United States, 261 U.S. 299, 43 S.Ct. 354, 67 L.Ed. 664; Detroit United Railway v. City of Detroit, 255 U.S. 171, 41 S.Ct. 285, 65 L.Ed. 570.