### DENNIS et ux. v. VILLAGE OF TONKA BAY et al.

Civ. No. 1391.

District Court, D. Minnesota, Fourth Division.

Jan. 21, 1946.

F. A. Whiteley, of Minneapolis, Minn., for plaintiffs.

Ernest Malmberg, of Minneapolis, Minn. (Malmberg & Nelson, of Minneapolis, Minn., of counsel), for defendants.

NORDBYE, District Judge.

This proceeding was before the Circuit Court of Appeals in Dennis v. Village of Tonka Bay, 8 Cir., 151 F.2d 411, 412, wherein it was held that error was committed by the trial court in dismissing the complaint. The court held that "there is no justification for dismissing a complaint for insufficiency of statement unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of the claim." And that, "The plaintiffs stated a claim upon which relief could be granted * * *." It directed this Court to reinstate the complaint and try the cause on the merits. This has now been done.

Some time in the fall of the year 1943, the Village Council of Tonka Bay began to consider the necessity of a zoning ordinance. This Village consists largely of residential property with a few scattered uses which may be termed commercial. It is situated on a relatively narrow and irregularly shaped peninsula extending into Lake Minnetonka. It is about a mile and three-quarters in length and varies from one-half mile to a mile and one-quarter in width. There is no concentrated business area and the few business enterprises which are located in the Village are scattered. At the time of the passage of the ordinance, the following uses in the Village reflect the approximate number of business places there. There were five boat liveries, all located on the lake shore,

one beer tavern, one soft drink parlor, one express office and garage, one bakery, a garage, a filling station, two stores, and an ice house. Apparently the location of this Village on the lake made it attractive to summer residents and, in later years, many of the homes have been occupied during the entire year. The lake shore is heavily populated with summer homes, particularly north of the area where plaintiffs' property is located. Although there was discussion about a zoning ordinance in the year 1943, no action was taken until August 15, 1944, when the ordinance now being attacked, in so far as it affects plaintiffs' property, was adopted. The ordinance divided the Village into "use districts" to be known as "residence" and "commercial" districts. It describes certain property as being in the commercial district and the remainder of the Village was placed in the residential zone. In zoning the Village, the ordinance limits the commercial districts to the particular areas where businesses were being conducted at the time the ordinance was passed. Section 5 of the ordinance reads as follows:

### "Non-Conforming Uses

"Section 5. The lawful use of land existing at the time of the adoption of this ordinance, although such does not conform to the provisions hereof, may continue, but if such non-conforming use is discontinued, any future use of said land shall be in conformity with the provisions of this ordinance.

"The Village Council may, by a special permit after public hearing, authorize the location of any commercial building or uses in the Residence District, * * *."

At the time the ordinance was passed, plaintiffs were operating, and had been operating for many years, a boat-renting establishment in the Village at a place on the lake called "The Narrows". Presumably, under the ordinance, they could have continued operations at that particular place under Section 5 thereof, and moreover, the particular area where their business was established was zoned under the ordinance as commercial. However, at or about the time the ordinance was passed, plaintiffs had made plans to remove their business to the particular area which, under the ordinance, had been zoned as residential. The zoning as residential of this area to which plaintiffs intended to move their boat-renting business is herein attacked as depriving plaintiffs of their property without due process and equal protection of the law. It is contended that the ordinance is arbitrary and unreasonable, and the jurisdiction of this Court is therefore invoked under the Fourteenth Amendment to the Federal Constitution. The only question, therefore, before this Court is the constitutionality of the ordinance. Concededly, the burden of proof rests upon the plaintiffs to establish its unconstitutionality. That the Village had authority under its police power to pass a zoning ordinance is conceded, and no extended discussion is necessary regarding the now well-recognized authority of a municipality to enact zoning legislation in the pursuance of its right to legislate for the safety, health, peace, good order, and morale of the community. Crowley v. Christensen, 137 U.S. 86, 11 S.Ct. 13, 34 L.Ed. 620. As noted, the ordinance as a law is not attacked. It is only challenged in so far as it affects the particular area which plaintiffs have selected as a site for their boat-renting business. A brief consideration of some of the facts and circumstances which pertain to the particular property in question and the village area as a whole may be noted.

It appears that one Grace Eliza West was the owner, and occupied with her husband, George M. West, as her homestead, Lot 655, Minnetonka Lake Park, with the vacated portion of Lake View Avenue adjacent to said lot, and a certain so-called lens-shaped tract fronting on Lake Minnetonka. The so-called lens-shaped tract became attached to the homestead when Lake View Avenue along the shore of Lake Minnetonka was vacated in the year 1904. The West family occupied a house on these premises for over forty years, and the entire tract during that period was used exclusively for residential purposes. The exact dimensions of the entire homestead property do not appear in the record, but scaling the map would indicate that it is about the size of two fair-sized city lots. West operated an ice business across the road from the homestead, and there is evidence that at times his customers would go to the West home to obtain ice from a large icebox therein when there was no attendant at the ice house, but, aside from such incidental and infrequent use, the entire West property was used solely for residential purposes. Mrs. West died in

March, 1926. Her estate was probated, and in Probate Court the entire tract was, by the decree of distribution, decreed to her husband, George M. West, for life with the fee to the six surviving children. In the decree of distribution, the entire tract was referred to as the homestead of the deceased. West died before 1944, and apparently for some time prior to that year the house was vacant and remained vacant up to the time that the ordinance was passed on August 15, 1944. Consequently, it should be noted that, when the ordinance was passed, the title to the entire West tract was vested in the six children, an undivided one-sixth thereof in each. The plaintiff Grace E. Dennis is one of the daughters of the Wests, and the plaintiff Leonard H. Dennis is the husband of Grace E. Dennis. Prior to the passage of the ordinance, the plaintiffs were constructing a foundation, partly on the West property and partly on certain land on which the Village had an easement for street purposes. It is to be gathered from the evidence that they planned to move a smaller house, which they had occupied some distance from the West homestead, onto this foundation, and to utilize the narrow strip of land fronting on the lake shore and a part of the West homestead for the location of their boat-renting business. This narrow strip has been referred to as the lens-shaped tract. It is about 190 feet long and 25 feet wide at the northerly end and tapers to a point at its southerly end. The Dennises, however, did not obtain the sole title to this narrow strip until in January, 1945. The fact that the foundation of their new home encroached on street property is of no particular significance as to the issues herein, except that the evidence indicates that the Village Council called that fact to the attention of the Dennises and demanded its removal. It also is fair to find that the Village Council was probably aware that the Dennises were contemplating the use of all or a portion of the West property for boat-renting purposes and intended to live in the house which was to be moved onto the foundation, so that they might be near their contemplated business, and that such plan had come to the attention of the Council prior to the passage of the ordinance. Some 32 fairly substantial residences, having a value ranging from eight to twenty thousand dollars, are located immediately north of the West tract. Marsh land is located to the west of the property in question. Lake Minnetonka is on the east, and on the south is a main-traveled tarvia road.

Plaintiffs intimate that the evidence manifests certain hostility to them in the enactment of the ordinance, and that this factor bears on the alleged unreasonableness and arbitrariness of the ordinance. But it seems clear that the evidence does not sustain the charge of personal animosity on the part of the Village Council; in fact, the evidence indicates quite the contrary. The ordinance permitted the ice business of the Wests to continue, although the location was zoned as residential. The boat-renting business of the plaintiffs at the Narrows, where they had conducted such business for many years, was left undisturbed. The Narrows is not more than three-quarters of a mile from the place to which plaintiffs intended to move their boat livery. Apparently, plaintiffs' tenure at the Narrows was uncertain, but it does not appear that this fact was known to the Village Council when it passed the ordinance. Nor does the ordinance appear to have been passed solely to prevent plaintiffs from utilizing the property as a boat-renting station. The Village Council had recognized the need of a zoning ordinance for more than a year, and it had so instructed the Village Attorney. This small lake Village was predominantly residential, so it was highly necessary that due restrictions be placed on the type of use which could be made of the property situated therein. The unrestricted use of property in the relatively small area embracing the confines of this Village would be suicidal for the many homes so dependent on harmonious and suitable surroundings.

The West homestead area had been used solely for residential purposes for more than forty years. The entire West tract was zoned as residential, and its proximity to the lake and other summer homes would indicate that it was best suited for residential sites. No untoward circumstances appear by reason of the residential zoning of this tract. All of the property to the immediate north of this area was likewise zoned solely for residential use. Outside of the ice business which Mr. West's son carried on across the road from the West homestead, the nearest business establishment is approximately one and one-half blocks distant. Between such businesses and the West property are located

two residences. Plaintiffs seek to isolate the lens-shaped tract from the remainder of the West homestead, and attempt to show the alleged unreasonableness of the Village Council in zoning that area as residential by emphasizing that it is too small for use as residential property. But the cogent answer to this contention is that the lens-shaped tract is, and was for over forty years, a part of the West homestead, and no good reason is forthcoming as to any basis for the zoning of this strip of land as commercial when the remainder of the West homestead was zoned, and should be zoned, as residential. If this were not zoned as residential, we would have the singular and wholly impractical situation in which a narrow strip along the lake, not over twenty-five feet in width, would be used for some commercial purpose, whereas the residential property, immediately to the rear thereof, would be deprived of any lake shore frontage. When plaintiffs obtained sole title to this narrow strip of property, they did so with full knowledge of the fact that the entire West property was zoned as residential. Moreover, in view of the position which plaintiffs now attempt to assume in their attack on the ordinance, it may be pointed out that in September, 1944, when they sought to obtain a permit under this very ordinance for a boat-renting business, and wherein they proceeded under Section 5 heretofore quoted, the application for the permit described the entire West tract and not the lens-shaped strip running in front of the property.

But, although the Court is convinced that the motives which prompted the Village Council in passing the zoning ordinance were not based on any personal hostility toward the West or Dennis families, such questions are not germane to the problem of determining the constitutionality of this ordinance. Generally the courts will not inquire into the motives of the members of a municipal governing body where the validity of the legislation is under consideration. Detroit United Ry. v. City of Detroit, 255 U.S. 171, 178, 41 S.Ct. 285, 65 L.Ed. 570.

It would seem that a mere recital of the pertinent facts unmistakably indicates that this ordinance in no way conflicts with the Federal Constitution. Here, we have a small lake community, which is almost wholly residential, desiring to restrict the further spread of business enterprises which will not harmonize with, and which may injure, the residential use of the homes in the Village. It is not for this *Court to substitute its judgment for that of* the Village Council in the exercise of its police power. Certainly, the Village Council cannot be criticized because it is limiting the further expansion of the boat-renting business in this relatively small Village, when the record indicates that there were some five boat-renting businesses located therein when the ordinance was passed. Surely, the general public for whom plaintiffs seem so solicitous, is, in so far as the Village of Tonka Bay is concerned, afforded ample boating opportunities for the enjoyment of this lake, of which all Minnesotans are so justly proud. The possession and rights to property are *all subject to the reasonable conditions* and limitations which the governing authorities determine to be essential to the public health, safety, peace, and good order of the community. Gundling v. City of Chicago, 177 U.S. 183, 20 S.Ct. 633, 44 L. Ed. 725. And the restrictions on the use of the West property in light of the circumstances are fully within the sound discretion of the governing body of this defendant Village. Even though reasonable minds may differ as to the soundness of the legislation or its necessity or desirability, this Court cannot interfere. As stated in Zahn v. Board of Public Works, 274 U.S. 325, 328, 47 S.Ct. 594, 595, 71 L.Ed. 1074: "* * * The common council of the city, upon these and other facts, concluded that the public welfare would be promoted by constituting the area, including the property of plaintiffs in error, a zone 'B' district, and it is impossible for us to say that their conclusion in that respect was clearly arbitrary and unreasonable. The most that can be said is that whether that determination was an unreasonable, arbitrary, or unequal exercise of power is fairly debatable. In such circumstances, the settled rule of this court is that it will not substitute its judgment for that of the legislative body charged with the primary duty and responsibility of determining the question."

The pertinent language of Judge Holt in the dissenting opinion which upon reargument became the majority view in State ex rel. Twin City Building & Inv. Co. v. Houghton, 144 Minn. 1, 13, 174 N.W. 885, 888, 176 N.W. 159, 8 A.L.R. 585, is timely: "It is about time that courts recognize the æsthetic as a factor in the affairs of life. Who will dispute that the general

welfare of dwellers in our congested cities is promoted, if they be allowed to have their homes in fit and harmonious or beautiful surroundings? Besides preserving and enhancing values it fosters contentment, creates a wholesome civic pride, and is productive of better citizens. City planning, by which mercantile and industrial establishments, hotels, apartments, and the individual homes are segregated, seems to me to be a public need that should invite the hearty co-operation of all the governmental departments. When property rights are taken or effected for this object there is a taking for a public use. The Legislature so deemed it. Its judgment should be respected by the courts. There is nothing in the Constitution, federal or state, which compels a holding that the taking authorized by this statute is not for public use."

This ordinance was enacted under statutory authority, Sections 462.01 and 462.02, Minnesota Statutes 1941. Section 462.01 provides: " * * * After the adoption of an ordinance hereunder and within ten days after its publication such ordinance may be suspended in effect upon the filing of a petition signed by resident freeholders of the municipality in a number equal to not less than ten per cent of the legal voters of the municipality requesting that the question of permitting the council to zone the city be submitted to the electors at a general or special election, and the ordinances shall not again become effective until a majority of the electors voting on the question approve the proposition permitting the governing body to zone the municipality."

It appears that the Dennises were informed of the passage of the ordinance on August 17, 1944, but took no action under the statute whereby the proposition of zoning would be submitted to the voters of the Village. Instead, they proceeded by petition under Section 5 of the ordinance, as stated above.

■■ There is an absence of any satisfactory showing that the Village Council acted arbitrarily and unreasonably in the passage of the ordinance, or in any way interfered thereby with the rights of these plaintiffs without due process of law. Under all of the well-considered decisions and in light of the evidence herein, plaintiffs' attack on the ordinance cannot be upheld. American Wood Products Co. v. City of Minneapolis, D.C., 21 F.2d 440, affirmed 8 Cir., 35 F.2d 657; Euclid v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303, 54 A.L.R. 1016; Women's Kansas City St. Andrew Society v. Kansas City, Mo., D.C., 54 F.2d 1071; State ex rel. Beery v. Houghton, 164 Minn. 146, 204 N.W. 569, 54 A.L.R. 1012; Marrs v. City of Oxford, 8 Cir., 32 F.2d 134.

■ The complaint of the plaintiffs herein, in addition to seeking injunctive relief, sets forth facts regarding the alleged erroneous boundary line of the West property and asks that the boundary line be judicially determined in this proceeding. The original complaint in this regard was based on alleged error made by the District Court of Hennepin County many years ago in establishing the boundary line. Shortly before the present trial, the plaintiffs filed an amendment to their complaint whereby they sought to litigate the right to certain property west of the lens-shaped tract by reason of certain adverse possession against the Village; that is, the Village has an easement to the claimed property for road purposes, and plaintiffs contend that they are entitled to a decree of adverse possession as against the Village. However, it seems elementary that such questions cannot be litigated in this proceeding for the right to a permanent injunction herein is based solely upon an alleged violation of the Federal Constitution. That constitutional question is no way dependent upon the litigation of these collateral issues which pertain to the correct boundary line of plaintiffs' property. Moreover, Section 541.01, Minnesota Statutes 1941, provides that "no occupant of a public way, levee, square, or other ground dedicated or appropriated to public use shall acquire, by reason of his occupancy, any title thereto." The Minnesota Supreme Court has unequivocally held that no prescriptive right may be gained in a public street. Bennett v. Beaty, 156 Minn. 293, 194 N.W. 627; Kuehn v. Village of Mahtomedi, 207 Minn. 518, 292 N.W. 187; Pierro v. City of Minneapolis, 139 Minn. 394, 166 N.W. 766. It seems sound to observe that the facts and circumstances in existence at the date of the passage of the ordinance are the only material factors for this Court to consider in determining the merits of plaintiffs' attack on the ordinance.

■ There is testimony in the record as to certain actions of the plaintiffs after the passage of the ordinance, particularly with reference to their attempt to obtain a permit under the ordinance to establish a boat livery on the area in question. The evi-

dence indicates that plaintiffs dredged the lake in front of the lens-shaped tract and obtained soil to fill in the front of this area so as to provide additional parking space for cars. The space would be necessary if a boat livery were located on the tract. But whether the Village Council acted arbitrarily or unreasonably in refusing to grant the permit is not before this Court. Concededly, this Court would have no jurisdiction in a mandamus proceeding. Moreover, the action of the Council in denying the permit has no bearing upon the alleged conflict between this zoning ordinance and the Federal Constitution. The conflict between them was the only question before this Court. The complaint also claims certain damages against the Village and its officers by reason of the passage of this ordinance, and a money recovery is sought. But the claim for such damages has been abandoned.

It follows, therefore, that the application of plaintiffs for a permanent injunction must be in all things denied. Findings of fact and conclusions of law and order for judgment in harmony herewith may be presented by counsel for the defendants on five days' notice. An exception is reserved to the plaintiffs.