JOSEPH HAGEE *et al.*, Plaintiffs-Appellees and Cross-Appellants, *v.*
THE CITY OF EVANSTON, Defendant-Appellant and Cross-Appellee.

First District (1st Division)    No. 79-1648

Opinion filed December 8, 1980.

Jack M. Siegel, Corporation Counsel, of Chicago, for appellant.

Jay A. Canel and Richard A. Angell, both of Rudnick & Wolfe, of Chicago, for appellees.

Mr. JUSTICE McGLOON delivered the opinion of the court:

Plaintiffs brought an action seeking to enjoin the city of Evanston from revoking a building permit and refusing to issue occupancy permits. The trial court held that Evanston was estopped from revoking the permit and granted the relief requested on the condition that Hagee comply with requirements set forth in the order. Evanston appeals.

On appeal, Evanston contends that (1) it was not estopped to revoke the permits, and (2) plaintiffs were precluded by the Administrative Review Act from seeking injunctive relief.

We affirm.

Joseph Hagee (Hagee), Reed Mitchell Hagee and Raymond Jump planned to build townhouses on the southwest corner of Ashland Avenue and Central Street in Evanston, Illinois. The development was to be called Central Place. According to the original plans, Central Place was to consist of 15 townhouses. Six townhouses were to be located in the two buildings on the corner lot. The western portion of the project, separated by a building owned by the National Foundation of Funeral Services, was to contain nine units.

The property is zoned for B-2 business use. No dwelling space is permitted below the second floor of any building located in a B-2 district. Other provisions of the zoning code relevant to this appeal are as follows: a yard five feet in depth is required where, as here, the side or rear lot line

of the property is adjacent to a residential district; on reverse corner lots contiguous to residential lots, as is the property in question, accessory buildings cannot be located within 25 feet of the rear lot line; and 1½ parking spaces are required for each dwelling unit in townhouse developments.

On September 8, 1978, Evanston issued a building permit and construction commenced. In October or November 1978, John T. Allen, an Evanston alderman and member of Evanston's planning and development committee, spoke to a constituent who questioned Central Place's compliance with the zoning code. In November or December 1978, Allen was contacted by Wendell Adair, another member of the planning and development committee, who also questioned the construction. Adair formerly challenged the building's compliance with the zoning code at the Zoning Amendment Committee hearing in early December 1978. Also present at the meeting was John Young, director of the department of amendments and appeals. Young transmitted the objections to William Dettmer, director of the department of inspections and permits in whom the final authority of enforcement and interpretation of zoning ordinances was vested.

Dettmer testified at the hearing below that he thereafter met with Hagee and his architects on December 18, 1978. At the meeting Dettmer informed Hagee that there were objections based on the proposed use of the lower level, the side yard setbacks, and the number of parking spaces per unit and their locations. Hagee was advised that he either could appeal the matter to the zoning board of appeals or change the plans to reflect compliance with the zoning code.

Kurt Koentopp, one of Hagee's architects who assisted in the planning of Central Place, testified that as a result of the December 18 meeting, the following changes were made on the plans:

(1) Ashland Avenue was designated as the front lot line so that the side setback requirement could be met;

(2) the setback on the south side of the east units was changed from zero to five feet;

(3) the designation on the plans was changed from "townhouses" to "multi-family" so that the parking space requirement would be met;

(4) the first floor description was relabeled "office"; and

(5) a concrete bumper was shown in the garage so that cars would not park within 25 feet of the sidewalk.

John Fugard, Jr., also one of Hagee's architects, testified that the revised plans were submitted to and approved by Evanston.

In February 1979, another meeting called by Allen was held in the city manager's office. Hagee, Koentopp, Allen, the city manager, Dett-

mer, and Dettmer's assistant Michael Garland were present. At the meeting, Allen expressed his belief that the first floor would not be used as office space. He therefore requested assurances from Hagee that the first floor use would be as such. He asked Hagee to record a covenant running with the land restricting the use of the ground level. He further asked that a paragraph be added to the sales contracts informing the purchaser of the required use and that Hagee advertise the ground floor as office space. Finally, Allen asked Hagee to meet with local residents to explain his position and answer their questions. Allen told Hagee that he was contemplating filing an appeal, but if Hagee complied with his requests, he would not.

In a letter dated February 8, 1979, Hagee informed Allen that a clause had been inserted in the sales contracts referring to the restricted use of the first floor. A week later, Hagee met with neighbors. Allen testified that he received no further assurances or information from Hagee.

On April 19, 1979, an appeal to the Evanston zoning board of appeals seeking revocation of the building permit was filed. At the planning and development committee meeting on April 23, Hagee was asked to sign an agreement stating that any further construction was done at Hagee's own risk. Hagee initially refused, but on May 14, 1979, he signed the agreement. Work proceeded while the appeal was pending. On July 17, 1979, the zoning board held a hearing on the appeal. On August 21, 1979, the zoning board voted to revoke the building permit.

Hagee subsequently brought an action seeking to enjoin the revocation of the permit and Evanston's refusal to issue occupancy permits. During the proceedings, evidence in addition to that enunciated in the preceding facts was heard. William Quinlan, Jr., in his capacity as president of the St. Athanasius School Board, expressed concern for the safety of children attending the school. He stated that because the ground floor windows on the wall along Ashland Avenue opened out, utility meters on this same wall were exposed, and traffic from Central Place exited into an alley adjacent to the school, there was a danger that the children would be injured.

Lawrence Okrent, a member of the Evanston plan committee, testified that a hazard to those using the sidewalk existed because the structures did not meet the proper setback requirements. Okrent testified that the setback from the sidewalk is 40 inches.

After the extensive hearing, the trial court enjoined the revocation of the permit. In its order, the court also required Hagee to do the following:

> (1) Record a covenant running with the land providing that the ground floor be used as a business or professional office in accordance with the zoning code. The covenant was to provide that the

office space shall not be used for residential use such as a sleeping room, living room or recreation use.

(2) Notify all purchasers of the restrictive covenant and include such notification in the sales agreements. All advertising was to clearly indicate the restricted use of the first floor.

(3) Post appropriate signs on the exterior of the building if the ground floor were used as an office open to the public.

(4) Replace the windows on the first floor with sliding windows.

(5) Place shrubbery between the sidewalks and outer building walls.

(6) Post signs warning of the presence of school children and alerting users of the parking lot of traffic in the lot.

(7) Cover utility meters and other utility installations so as to protect passersby from injury. The meters are to be fully enclosed and not accessible to members of the public.

(8) Provide separate heating facilities for the business and residential portions of the building unless such separate facilities would not be feasible or would be onerous.

First, Evanston contends that it is not estopped from revoking the building permit because the permit was issued in error by a ministerial official without the municipality's knowledge. In his brief, Hagee concedes for the purposes of this litigation that the permit was issued in error. However, he contends that subsequent acts by city officials induced him to continue with construction and that the city is therefore estopped to revoke the permit.

■■ In *Cities Service Oil Co. v. City of Des Plaines* (1961), 21 Ill. 2d 157, 171 N.E.2d 605, the court stated:

"The general rule is that a city cannot be estopped by an act of its agent beyond the authority conferred upon him. (*Rippinger v. Niederst*, 317 Ill. 264; *Burton Co. v. City of Chicago*, 236 Ill. 383; *Hibbard, Spencer, Bartlett & Co. v. City of Chicago*, 173 Ill. 91.) It has been stated that anyone dealing with a governmental body takes the risk of having accurately ascertained that he who purports to act for it stays within the bounds of his authority, and that this is so even though the agent himself may have been unaware of the limitations on his authority. (*Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384, 92 L. Ed. 10, 15.)" (21 Ill. 2d 157, 160-61, 171 N.E.2d 605, 607.)

(See also *Scanlon v. Faitz* (1978), 57 Ill. App. 3d 649, 373 N.E.2d 614, *aff'd* (1979), 75 Ill. 2d 472, 389 N.E.2d 571; *Ganley v. City of Chicago* (1974), 18 Ill. App. 3d 248, 309 N.E.2d 653.) Therefore in this case the issuance of the building permit in error is an insufficient fact in itself upon which to base estoppel.

The court in *Cities Service* further noted:

"The general rule is qualified, however, to enable a party to invoke the doctrine where his action was induced by the conduct of municipal officers, and where in the absence of such relief he would suffer a substantial loss and the municipality would be permitted to stultify itself by retracting what its agents had done. (*City of El Paso v. Hoagland*, 224 Ill. 263; *Hurt v. Hejhal*, 259 Ill. App. 221.)" (21 Ill. 2d 157, 161, 171 N.E.2d 605, 608.)

See also *Kenny Construction Co. v. Metropolitan Sanitary District* (1971), 52 Ill. 2d 187, 288 N.E.2d 1.

■■ We find that plaintiffs may properly invoke the doctrine of estoppel. No action was taken to halt construction or revoke the building permit until seven months after the permit was issued. City officials knew of possible code and zoning violations at least five months prior to the appeal to Evanston's zoning board. In December, four months before any action was taken to revoke the building permit and halt construction, Dettmer informed Hagee that construction could continue if the plans were revised to reflect compliance with the zoning code. Hagee rightfully relied on Dettmer's representations because Dettmer, as director of the department of inspections and permits, had final authority to interpret and enforce the zoning code and issue building permits. The revised plans were submitted to and approved by Evanston in February 1979. Evanston admits to this fact in their brief.

Thus, while objections to the construction existed, plaintiffs were induced by city officials to believe that they could continue with construction. They were induced by the affirmative acts of Dettmer and by the inaction of officials to seek revocation of the permit. In *Cities Service*, the fact that the city did not seek revocation of the permit until seven months after it had been issued was a determinative factor in the court's decision that the city was estopped to seek revocation.

Furthermore, large sums of money were expended in reliance upon the permit and apparent acquiescence by city officials. The property was purchased and construction contracts entered into as a result of the issuance of the building permit. At the time the appeal to the zoning board was filed, all exterior work was completed, the interior work was partially completed, and $987,000 in construction costs had been incurred. We therefore find that in the absence of the relief granted, plaintiffs would suffer substantial loss.

Secondly, Evanston argues that plaintiffs are precluded from bringing an action in the chancery division of the circuit court. Evanston states that their sole means of seeking relief from the decision of the Zoning Board is bringing an action pursuant to the Administrative Review Act. Ill. Rev. Stat. 1977, ch. 110, par. 264 *et seq.*

■■ In *O'Laughlin v. City of Chicago* (1975), 28 Ill. App. 3d 766, 329 N.E.2d 528, *aff'd on other grounds* (1976), 65 Ill. 2d 183, 357 N.E.2d 472, a similar issue was raised. The court therein stated:

> "*Ehrlich v. Village of Wilmette* (1935), 361 Ill. 213, 222, 197 N.E. 567, held the equity court (as then described) had jurisdiction to enjoin the enforcement of a zoning ordinance against a particular piece of property. The supreme court affirmed the remedy of an injunction against defendant's argument that mandamus was the proper remedy. In their own brief defendants cite a case in which the supreme court upheld an injunction against a building permit revocation. *Cities Service Oil Co. v. City of Des Plaines.*
>
> In the case at bar, * * * an injunction is a proper remedy, and a court in the chancery division properly heard the cause." (28 Ill. App. 3d 766, 775, 329 N.E.2d 535.)

We therefore find that an injunction was a proper remedy.

For the foregoing reasons, we affirm the order of the circuit court of Cook County.

Order affirmed.

O'CONNOR and CAMPBELL, JJ., concur.