**Joseph HAGEE, et al., Plaintiffs,**

v.

**CITY OF EVANSTON, Defendant.**

**No. 81 C 4046.**

United States District Court,
N. D. Illinois, E. D.

Jan. 18, 1982.

John Bernard Cashion, Chicago, Ill., for plaintiffs.

Jack M. Siegel, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge.

Invoking 42 U.S.C. § 1983 (1976), plaintiffs Joseph Hagee, Reed Mitchell Hagee and Raymond Jump seek to hold the City of Evanston, Illinois liable for the allegedly arbitrary behavior of its employees. Evanston has moved to dismiss the complaint for failure to state a claim. This motion is granted.

### Count I

The following facts underlie Count I.[1] Plaintiffs contracted to purchase property in Evanston on May 18, 1978. The purchase was contingent upon Evanston's issuing a building permit authorizing the construction of 15 townhouses on the land. The necessary permit was obtained on September 8, 1978, and construction commenced soon thereafter. On December 28, 1978, an Evanston official made known certain objections concerning plaintiffs' "Central Place" project. Plaintiffs complied with the official's demands and submitted new plans which were approved in February of 1979. Later that month a second meeting was held in which City officials again demanded changes. Once again, plaintiffs complied.

On April 19, 1979, Evanston Alderman John Allen filed an appeal with the Evanston Zoning Board of Appeals ("Board"). Allen alleged that Central Place's construction violated Evanston's zoning ordinance and that plaintiffs' building permit should accordingly be revoked. Following a hearing, the Board voted on July 17, 1979 to revoke. Work at the job site ceased.

Plaintiffs next sought an order from the Circuit Court of Cook County enjoining the Board's revocation. On October 17, 1979, the court granted plaintiffs' request in part, holding that Evanston was estopped from revoking the permit. In reaching this determination, the court noted that plaintiffs had incurred nearly a million dollars in expenses while relying upon Evanston's assurances that their plans, as modified, were acceptable. The court conditioned its injunction, however, upon plaintiffs' compliance with numerous conditions, the most significant of which being that plaintiffs record a covenant restricting Central Place's entire ground floor to purely business and professional uses.

The City of Evanston appealed and argued that the Circuit Court had improperly relied upon the estoppel doctrine. Unpersuaded, the Illinois Appellate Court affirmed the lower court's decision on December 8, 1980. *Hagee v. City of Evanston*, 91 Ill.App.3d 729, 47 Ill.Dec. 68, 414 N.E.2d 1184 (1st Dist.1980).

Suit in this court commenced more than a year and a half later in July of 1981. (Central Place has since been completed.) Plaintiffs argue that the Zoning Board "arbitrarily" revoked their permit and thus deprived them of property without due process of law. Such illegal act, it is further claimed, caused extensive consequential harm in the form of "attorneys fees, increased financing expenses, forced renegotiation of subcontracts, preservation expenses during shutdown and increased costs

---

1. The factual outline detailed in the text has been drawn primarily from the complaint. It has been supplemented in part by additional facts found in the Illinois Circuit Court's order.

in materials." Complaint, ¶ 13. In dollar figures, the damage prayer totals $515,000. Attorneys fees for the present matter are also sought. *See* 42 U.S.C. § 1988 (1976).

■ One cannot seriously dispute that in revoking plaintiffs' permit, the Board acted under color of state law and thereby worked a temporary deprivation of a valuable property right (plaintiffs' permit). "Standing alone, however, these [facts] do not establish a violation of the Fourteenth Amendment. Nothing in that amendment protects against all deprivations of life, liberty or property by the State. The Fourteenth Amendment protects only against deprivations 'without due process of law.'" *Parratt v. Taylor*, 451 U.S. 527, 537, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981). The motion to dismiss can accordingly be denied only if plaintiffs' allegations sufficiently describe Board conduct which was so unfair that it fell below the norm required by the principle of "due process."

Plaintiffs do not contend that they were subjected to any procedural unfairness in connection with their hearing before the Board. Their constitutional argument is instead grounded solely in the fact that the Board's decision was later reversed by the state courts: "The revocation of the building permit by the City of Evanston *must be deemed arbitrary* in that the Illinois Appellate Court ruled that the City of Evanston, as a matter of law, was estopped from revoking the permit." Complaint, ¶ 10 (emphasis added). In reaching its contrary decision, the Board, plaintiffs contend, "chose to ignore one of the most basic rules in the law affecting building and zoning regulations: that of estoppel." Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss at 8. The Board's decision was thus so substantively in error

that its very issuance contravened the Constitution.

Evanston responds that at the time of the Board's hearing, plaintiffs had at most a *state law* right to proceed with their construction. Only the *Illinois* doctrine of estoppel frustrated the Board's ultimate decision. Because of this, the complaint reduces in defendant's eyes merely to a charge that a municipal administrative body misapplied state law. Therefore, no federal claim is present.

■ Defendant's analysis is correct. In that Count 1 relies solely upon alleged State law errors, it is plainly insufficient as a matter of law:

> We cannot treat a mere error of State law, if one occurred, as a denial of due process; otherwise, every erroneous decision by a State court on State law would come here as a federal constitutional question.

*Gryger v. Burke*, 334 U.S. 728, 731, 68 S.Ct. 1256, 1257, 92 L.Ed. 1683 (1948); *accord*, *Garner v. State of Louisiana*, 368 U.S. 157, 187 n.2, 82 S.Ct. 248, 264 n.2, 7 L.Ed.2d 207 (1961) (Harlan, J., concurring in the judgment).[2]

■ No case cited by plaintiffs establishes any contrary rule. In *Sixth Camden Corp. v. Evesham Tp., Burlington Cty.*, 420 F.Supp. 709 (D.N.J.1976), the most analogous precedent, a plaintiff sought relief on damage claims growing out of a zoning board's allegedly "arbitrary" refusal to grant a variance. As in the present case, the challenged administrative decision was overturned by a state court on state law grounds prior to the institution of the federal suit. Rejecting a motion to dismiss, the district court held that plaintiff's alle-

---

2. Of course, the gist of plaintiffs' argument is that the Board's decision constituted not simply a "mere" error of state law, but rather a "gross" misconstruction. I do not agree that this is a distinction of constitutional magnitude. Moreover, even if I did, plaintiffs would still lose for the simple reason that the Board was not guilty of "gross" error. That its decision to revoke was not off by "that much" is evidenced by the fact that, contrary to plaintiffs' asser-

tion, the Board's action was not completely overturned. In fact, the Illinois courts apparently viewed plaintiffs' plight as somewhat unique and as a result imposed numerous conditions precedent upon plaintiffs' right to injunctive relief. Plaintiffs certainly did not view these conditions as de minimis. Had they, it is unlikely that they would have cross-appealed, as they initially did, from that portion of the Circuit Court's order imposing them.

gations of "arbitrariness" stated a claim for damages. Despite the surface similarity, the arguments pressed here differ markedly from those made in *Sixth Camden*. There, plaintiffs' assertions of "arbitrariness" rested upon their charge that the zoning board's decision had failed to further in any way "the public health, safety, morals, or general welfare." *Id.* at 722 (citing *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 387, 47 S.Ct. 114, 118, 71 L.Ed. 303 (1926)). In essence, they challenged the zoning board's attempt to comply with federally mandated substantive requirements.[3] *See also Sternaman v. County of McHenry*, 454 F.Supp. 240 (N.D.Ill.1978). Here, by contrast, plaintiffs do not assert that the Board erred in any way while applying substantive federal zoning norms.[4] As noted before, they complain instead only of the Board's failure to deal properly with the state law criterion of estoppel. These are not disputes the federal courts were designed to handle.[5]

### Count II

 In Count II plaintiffs complain of activities occurring after the issuance of the Circuit Court's order of October 17, 1979. Specifically, they charge that work at the job site recommenced in November and that

Evanston illegally ordered a cessation on December 14. Exactly how or why this might amount to a violation of due process is not apparent at all. In any event, it is clear that plaintiffs will be unable to prove that Evanston acted wrongfully in ordering the December 14 termination. Under the terms of the Circuit Court's order, plaintiffs' right to restart construction was conditioned upon their initial compliance with the terms of the decree. By December 14, such compliance had not occurred. Uncontroverted documentary evidence establishes that the required restrictive covenant was not filed until December 28.[6] Plaintiffs thus had no legal right to build on December 14. The shutdown order could not have been illegal.[7]

### ORDER

For all the reasons stated above, the complaint is dismissed in its entirety.

---

3. The requirement that a zoning decision bear "a substantial relationship to public health, safety, morals, or general welfare" derives directly from the federal constitution. *Nectow v. City of Cambridge*, 277 U.S. 183, 188, 48 S.Ct. 447, 448, 72 L.Ed. 842 (1928); *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395, 47 S.Ct. 114, 121, 71 L.Ed. 303 (1926).

4. Indeed, plaintiffs do not challenge defendant's assertion that the building permit should never have issued at all, given Central Place's nonconformity with Evanston's concededly valid zoning ordinance. This suggests that the Board's revocation decision—though erroneous on state law estoppel grounds—was nevertheless in accord with the federal requirement of being substantially related to Evanston's "health, safety, morals or general welfare."

  Plaintiffs, in addition, do not allege that the decision to revoke violated any *federal* rule of estoppel. *Cf. Detroit United Railway v. Detroit*, 255 U.S. 171, 176, 41 S.Ct. 285, 287, 65 L.Ed. 570 (1921). Nor obviously do they claim that they could recover even if it had, in light of the Appellate Court's ultimate ruling.

5. The *Sixth Camden* Court, in fact, specifically noted that mere state law invalidation of a variance denial does not in and of itself establish the constitutional infirmity of the denial. *Sixth Camden Corp. v. Evesham Tp., Burlington Cty.*, 420 F.Supp. 709, 729 (D.N.J.1976); *but cf. Indiana ex rel. Anderson v. Brand*, 303 U.S. 95, 58 S.Ct. 443, 82 L.Ed. 685 (1938) (Supreme Court empowered in certain circumstances to nullify a state court's construction of state law).

6. To the extent that I have gone beyond the pleadings in resolving this claim, I have treated the motion as one for summary judgment. Fed.R.Civ.P. 12(c). Plaintiffs have had ample opportunity to respond to the documents put forth by Evanston. They have, in fact, filed two briefs in the interim.

7. Given my disposition of this motion, I have found it unnecessary to discuss or resolve the remaining claims put forth by the parties.