DOYLE SHARRETT *et al*, Plaintiffs-Appellees, *v.* OWEN CAMPBELL *et al.*,
Defendants-Appellants.—(The City of Robinson, Defendant.)

Fifth District   No. 81—567

Opinion filed August 12, 1982.—Rehearing denied September 9, 1982.

David M. Correll, Ltd., of Robinson, for appellants.

Robert L. Douglas, Charles C. Roberts, and Fred W. Johnson, all of Robert L. Douglas, Ltd., of Robinson, for appellees.

PRESIDING JUSTICE KARNS delivered the opinion of the court:

Defendants, Owen and Patsy Campbell, appeal from the judgment of the circuit court of Crawford County in favor of plaintiffs, Doyle and Ada Sharrett, declaring that defendants' lot in the Meserve Heirs Addition to the city of Robinson, Illinois, is classified as R-S under the applicable zoning ordinance; permanently enjoining defendants from any construction within 15 feet of the north boundary of plaintiffs' adjoining lot; mandatorily requiring defendants to remove that portion of the residence which extends within the 15-foot area; and assessing plaintiffs' costs and attorney fees against defendants.

Plaintiffs and defendants own adjoining lots in the Meserve Heirs Addition to the city of Robinson, Illinois, each owning two platted lots, plaintiffs' lots being located directly south of defendants'. In September of 1980, defendants decided to build a house and applied for a

building and improvement permit with the zoning administrator for the city of Robinson. Walter Newlin, zoning administrator during the relevant time, issued the permit to defendants showing the zoning classification as R-1.

Newlin testified that when he issued the permit he assumed "by knowing various things and buildings and where the R-1's are" that defendants' lot was zoned R-1. Newlin admitted, after verifying the proper zoning classification, that he was mistaken, that R-S was the correct classification and that he became aware of his mistake after the filing of the instant lawsuit. Newlin further testified that he informed defendants of the setback requirements for the R-1 zoning classification and of the requirements contained in the Meserve Heirs Addition restrictive covenants.

Newlin also testified as to the zoning classification of plaintiffs' lot. Plaintiffs' house was originally built on an R-1 permit, and a building and improvement permit was issued with an R-1 classification; however, Ada Sharrett testified that two building and improvement permits had been issued to plaintiffs, by Newlin, listing the classification as R-S.

The important distinction, for the purposes of the instant appeal, between the R-1 and the R-S zoning classification is that the R-1 classification only requires a six-foot side yard whereas the R-S classification requires a 15-foot side yard. Under both classifications the eaves may extend out from the side of the house two inches per foot of side yard as measured from the lot line to the outer surface of the outside wall of the house.

All of the lots in the Meserve Heirs Addition are subject to a number of restrictive covenants, one of which provides:

> "No building shall be located nearer than forty (40) feet to the front line, nor nearer than fifteen (15) feet to any side street line. All dwellings shall have a side yard of not less than six (6) feet measured from the face of the building to the property line and running along the side of the property. The total of two side yards for any one dwelling shall, however, be not less than fifteen (15) feet, no detached garage or other building shall be located nearer than eighty (80) feet to the front line, and shall be located at least five feet from any side or rear property line."

In October 1980, defendants began construction and a subcontractor, Guyer, began to dig the footings for the structure. Ada Sharrett testified that in middle or late October she spoke with Guyer and indicated that she thought he was getting too close to the south property line. The southernmost portion of the construction consists of a garage and utility room. This area is the subject of the controversy.

In late October and early November 1980, concrete for the basement and the footings was poured. Work continued at the construction site for approximately three months. Ada Sharrett testified that, from January 18, 1981, through the date of trial, July 16 and 17, 1981, she kept a diary of the work performed on defendants' home. The diary indicated that, as of January 18, substantial work had been performed on the house but little, if any, work had been performed on the garage and utility room. On January 20, plaintiffs left for a one-week vacation and, upon returning, noticed that work had been performed on the disputed area.

Herbert Young, defendants' primary contractor, testified that after plaintiffs returned from their vacation they indicated to him that the overhang on the roof was too wide. Young determined that there might be a violation of the eaves requirement and informed defendants of this. At this point in the proceeding, the following exchange took place:

"Q. Did he [plaintiff], at any time, other than that one time, have a conversation with you?

A. Yes, sir.

Q. Tell Judge Arnold what that was.

A. Like I said before, they called me one night earlier, and was asking about the garage and the next morning *** they came over to the lot and asked if it would be six foot from the property line and I said, yes, it would be; and Mrs. Sharrett said if it is not six foot, we'll make you move it, and I said, it will be six foot and it is."

On January 29, 1981, plaintiffs notified defendants and certain city officials that they believed defendants to be in violation of the eaves restriction and that the side of the house was too close to the lot line. On Janaury 30, 1981, four city officials, Charles Alumbaugh, the mayor pro tem, Donald Hoagland and David Saad, members of the city council, and Newlin, met with the parties at the construction site to discuss possible violations. Alumbaugh testified that, at the time of the meeting, he believed defendants' lot to be zoned R-1. Alumbaugh stated that "[w]e assumed it was R-1 and I think everybody else assumed it was R-1." Alumbaugh further testified that defendants were in violation of the eaves regulation and that a citation was issued. Alumbaugh was of the opinion that at the time of the meeting plaintiffs believed the property to be zoned R-1 and that the six-foot side yard requirement was applicable. Hoagland also testified that at the time of the meeting plaintiffs believed the property to be zoned R-1 and that the six-foot side yard requirement was applicable.

On February 4, 1981, plaintiffs filed a petition for injunction. Plaintiffs averred that the finished wall of defendants' residence

would be closer than six feet from their property line in violation of the restrictive covenant applicable to all lots in the Meserve Heirs Addition and sought an injunction requiring defendants to cease and desist from further construction. On February 5, 1981, the court issued a temporary restraining order, without notice, enjoining defendants from further construction. On February 13, 1981, after a hearing on defendants' motion to quash the temporary restraining order, the injunction was dissolved by consent of the parties. On this same date, plaintiffs filed an amended petition for injunction. The amended petition contained three counts; count I for violation of the six-foot side yard requirement contained in the restrictive covenant; count II for the eaves violation, and count III for violation of the 15-foot side yard requirement pursuant to the R-S zoning ordinance. On February 23, 1981, plaintiffs filed a declaratory judgment action requesting the court to declare defendants' lot in the Meserve Heirs Addition to be zoned R-S. Thereafter, these actions were consolidated.

On March 6, 1981, the parties entered into a stipulation which provided that defendants would make no further effort to obtain a variance regarding the eaves requirement and that no construction would continue in the disputed area until a final hearing and judgment on the merits in this consolidated action.

On October 21, 1981, following a two-day trial, the court entered an order granting judgment for plaintiffs on all counts.

As to that portion of the trial court's order declaring the proper zoning classification of defendants' lots to be R-S, it is undisputed that this is the appropriate classification. Newlin, the zoning administrator, admitted that he made a mistake when he issued the building and improvement permit designating the classification as R-1. It is also undisputed that defendants are in violation of the zoning ordinances of the city of Robinson, Illinois, as they relate to the length of the eaves. We note that defendants, upon learning of this violation, petitioned for a variance, which was denied, and, by stipulation of the parties, have agreed not to perfect their appeal to the Zoning Board until the instant litigation is completed. Therefore, the matters in controversy involve the alleged violations of the restrictive covenant and the applicability of the 15-foot side yard requirement of the R-S zoning ordinance.

■ The pertinent restrictive covenant requires a six-foot side yard as "measured from the face of the building to the property line and running along the side of the property." The only evidence introduced regarding the distance from defendants' garage to plaintiffs' property line was that of Michael Gill, a civil engineer and land surveyor. Gill testified that he surveyed the area in question and determined that the distance from the southwest corner of the garage to

plaintiffs' property was 6.1 feet and that the distance from the southeast corner was 7 feet. The survey, which Gill had reduced to writing, was admitted into evidence. The evidence is uncontroverted that defendants' garage and utility room, the southernmost part of the construction, was more than 6 feet from plaintiffs' property line. Therefore, the finding of the trial court that defendants are in violation of the restrictive covenant is against the manifest weight of the evidence.

We note that in count I of their amended petition for injunction, plaintiffs aver that "the finished wall of the residence will be closer than six feet to the boundary of the property," and in count III plaintiffs aver that "the side yard on the house being constructed by defendants is six (6) feet wide." Although the issue is not raised by the parties, this may be a judicial admission establishing that the side yard is at least six feet as required by the terms of the restrictive covenant. We further note that plaintiffs' counsel elicited testimony from Gill regarding the distance from plaintiffs' property line to the furthest extension of the eave in order to establish that this distance is less than six feet. It is apparent that the trial court considered this when it stated, in its memorandum decision "that the South part of the Campbell house, which was apparently the last part to be constructed, was, with respect to the eaves, going to be less than six feet from the South line of the Campbell Lot nine (9)." While this is true, it is irrelevant to the issue of whether the restrictive covenant was violated because the covenant, by its terms, directs that the measurement be made from the face of the building to the property line.

The final issue before us involves the applicability of the 15-foot side yard requirement of the R-S zoning ordinance and thus, the mandatory injunction issued requiring defendants to remove that portion of the structure within this area. On appeal, defendants assert that, under the special facts and circumstances of this case, plaintiffs should be equitably estopped from claiming that defendants are in violation of the side yard requirement of the R-S zoning ordinance and that, in balancing the hardships involved in the mandatory injunction, the equities favor them. Plaintiffs argue that defendants did not prove their affirmative defense of estoppel, that they are not entitled to a balancing of the equities where they had notice of the existence of a dispute and that the judgment of the trial court is not against the manifest weight of the evidence.

We observe at the outset that estoppel arises in zoning cases in two situations. The first is where there is a substantial change of position under a building permit validly issued, which is later revoked because of subsequent zoning or changes in zoning. The second is where there has been a substantial change of position under an in-

valid permit and the party to whom the permit was issued was actively misled by city officers. (*Richards v. City of Highland* (1978), 59 Ill. App. 3d 692, 375 N.E.2d 1023; *Excellent Builders, Inc. v. Pioneer Trust & Savings Bank* (1973), 15 Ill. App. 3d 832, 305 N.E.2d 273.) We further observe that while estoppel has been applied against a municipality in many cases where a building permit was invalidly issued (see *Cities Service Oil Co. v. City of Des Plaines* (1961), 21 Ill. 2d 157, 171 N.E.2d 605; *City of Peru v. Querciagrossa* (1979), 73 Ill. App. 3d 1040, 392 N.E.2d 778, and cases cited therein), we have found only two Illinois cases where it has been applied against individual property owners. *Richards; Parsons v. Guild Grain Co.* (1970), 125 Ill. App. 2d 59, 259 N.E.2d 806.

*Cities Service* is the seminal case in Illinois concerning the application of estoppel against a municipality in a zoning case where a building permit was invalidly issued. In *Cities Service*, an action to enjoin enforcement of. an ordinance prohibiting the location of a gasoline station within 300 feet of a church, the Illinois Supreme Court delineated the general rules to be applied in such cases:

> "The general rule is that a city cannot be estopped by an act of its agent beyond the authority conferred upon him. [Citations.] It has been stated that anyone dealing with a governmental body takes the risk of having accurately ascertained that he who purports to act for it stays within the bounds of his authority, and that this is so even though the agent himself may have been unaware of the limitations on his authority. [Citation.] In matters involving strictly public rights the courts do not interpose to hold the municipality estopped except under special circumstances which would make it highly inequitable or oppressive to enforce such public rights. [Citation.]
>
> The general rule is qualified, however, to enable a party to invoke the doctrine where his action was induced by the conduct of municipal officers, where in the absence of such relief he would suffer a substantial loss and the municipality would be permitted to stultify itself by retracting what its agent had done." (21 Ill. 2d 157, 160-61, 171 N.E.2d 605, 607-08.)

In *Cities Service*, the court applied estoppel against the municipality where the oil company had incurred obligations of more than $6,000 in reliance on an invalidly issued permit and the apparent acquiescence of the city officials. The court noted that if the oil company had been aware of the applicable ordinance or made no attempt to become aware of it, then the issuance of a building permit contrary thereto would not create an estoppel against the city.

In *City of Peru*, a building permit was issued by the city zoning inspector who advised the defendants of the requisite setback lines.

Following substantial expenditures incurred in excavating a basement and pouring concrete footings, the city "became aware for the first time that defendants' proposed dwelling would violate the city zoning ordinance in three respects: (1) the lot area would be 3,300 square feet, not 6,000 as required by ordinance; (2) the front yard would be 14.9 feet deep, not 25 feet; (3) the backyard would be 20.4 feet deep, not 25 feet." (73 Ill. App. 3d 1040, 1041, 392 N.E.2d 778, 779.) The city council voted to rescind the permit, brought an action to enjoin construction, and the defendants raised the affirmative defense of equitable estoppel. The appellate court, in reversing the trial court, held the city estopped from asserting the violation of the zoning ordinance because of defendants' reliance on the building permit and the advice of the zoning inspector as to the setback requirements.

*Cities Service* and *City of Peru* are distinguishable from the instant case in that they involve the application of estoppel against a municipality whereas plaintiffs in this case brought a private enforcement action against defendants. As stated, we have found two Illinois cases in which estoppel was applied against individual property owners.

In *Richards v. City of Highland* (1978), 59 Ill. App. 3d 692, 375 N.E.2d 1023, plaintiffs, 35 residents of the Town and Country Estates Subdivision, brought an action against the city of Highland and the Ralph Korte Construction Company, seeking an injunction restraining defendants from constructing any building, other than a single-family dwelling, in the subdivision and for a declaratory judgment that multi-family dwellings were prohibited. The applicable zoning ordinance provided that all new subdivisions shall be classified R-1, in which only single-family dwellings are permitted; however, the city of Highland issued Korte two building permits for construction of apartment buildings, and Korte immediately began construction. At trial, the mayor and city manager of Highland testified that the area in question had always been treated as zoned R-3, which allowed for multi-family dwellings, and were of the opinion that the permits had been validly issued. The evidence was uncontroverted that Korte had expended over $58,000 for construction prior to the complaint being brought. The court in *Richards*, noting that at all times the city of Highland treated the area in question as zoned R-3, held plaintiffs to be estopped from challenging the construction "in light of their failure to attempt to clarify the zoning situation or to enjoin other nonconforming uses, and in light of the substantial sum of money expended by Korte." 59 Ill. App. 3d 692, 696, 375 N.E.2d 1023, 1026-27.

In *Parsons v. Guild Grain Co.* (1970), 125 Ill. App. 2d 59, 259 N.E.2d 806, plaintiff, James C. Parsons, brought an action to enjoin defendant, Guild Grain Company, from constructing a grain stor-

age bin, alleging that defendants were in violation of the applicable zoning ordinance. The parties owned adjoining lots in Geneseo, Illinois. Specifically, plaintiff alleged that the grain storage bin was not a permitted use within the general business zoning classification. The city issued a building permit for the proposed construction and defendant made substantial expenditures on the project. There was also evidence that defendant had shown the plans for the proposed construction to plaintiff prior to applying for the building permit, and that plaintiff had not objected. The court, relying on the opinion of the Illinois Supreme Court in *Cities Service*, found that the city of Geneseo would have been estopped had it brought the action against defendant and that there was "ample evidence for the trial court's conclusion that the equities were against plaintiff and in favor of defendant." (125 Ill. App. 2d 59, 65, 259 N.E.2d 806, 810.) The court, in *Parsons*, noted that:

> "The reluctance of the court to estop a municipality from enforcing a violation of its zoning ordinances is rather directly related to the nature of the relationship of the corporate authority to its various officers and agents and the public nature of a municipality. The same reasons for declining to apply equitable estoppel against an individual property owner do not exist and indeed the equitable considerations are quite different." 125 Ill. App. 2d 59, 64-65, 259 N.E.2d 806, 809.

In the instant case, defendants argue that plaintiffs should be equitably estopped from asserting the violation of the 15-foot side yard requirement of the R-S zoning classification and, regarding the issuance of the mandatory injunction, the equities favor them. We agree. In this case, as in *Richards* and *Parsons*, we have a nonmunicipal plaintiff and therefore, the judicial reluctance to apply estoppel is not present. We observe, as the court did in *Parsons*, that if the city of Robinson had brought this action, the conduct of the zoning administrator, the mayor, and the members of the city council, would have been sufficient to estop it from asserting the violation in question.

Plaintiffs argue that *Parsons* is distinguishable from the instant case in that the plaintiffs in *Parsons* were shown the proposed building plans prior to defendant's applying for a building permit. While we recognize that the cases are factually distinct, we find ample evidence to support defendants' affirmative defense of estoppel. Plaintiffs, as well as the city officials, believed defendants' lot to be zoned R-1 and, importantly, the six-foot side yard requirement to be applicable. Prior to February 13, 1981, the date of the filing of plaintiffs' amended petition, there was no indication that the parties, or anyone else, were aware that the lot was actually zoned R-S. This was approximately 4½ months after construction commenced. It is estab-

lished, by the survey of Michael Gill, that defendants are more than six feet from defendants' south property line. Plaintiffs argue, and the trial court found, that the garage, at that distance, would obstruct their view, present a fire hazard and add to their loss of privacy. However, the evidence is uncontroverted that the cost to defendants of relocating the garage and utility room to the north side of the lot would be between $15,000 and $20,000.

In conclusion, the record reveals that, prior to the filing of plaintiffs' amended petition, the parties proceeded under the assumption that the six-foot side yard requirement was applicable. This assumption was reinforced, as it was in *Richards*, by the actions of the city officials. We note the substantial financial hardship defendants would suffer if the mandatory injunction were to stand. Therefore, we find that the instant case falls within the second class of zoning cases in which equitable estoppel arises; here there has been a substantial change of position under the permit issued by the zoning administrator and the defendants to whom the permit was issued were actively misled by city officers. Considering the special facts and circumstances of the instant case, plaintiffs are equitably estopped from now claiming defendants to be in violation of the 15-foot side yard requirement.

Our conclusion requires that the judgment assessing costs and attorney's fees against defendants must also be reversed.

The judgment of the Circuit Court of Crawford County is accordingly reversed.

Reversed.

JONES and WELCH, JJ., concur.